## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Francis Gates Individually      :
and as the Administrator      :
of the Estate of Olin Eugene "Jack"  :
Armstrong, Jr.      :
10288 Plains Highway      :
Eaton Rapids, MI 48827      :
      :
and      :
      :
Jan Smith      :
      :
      :
and      :
      :
Pati Hensley      :
2575 Burnt Hickory Drive, NW  :
Marietta, GA 30064      :
      :    **REDACTED COMPLAINT**
and      :    CA 06-1500 (RMC)
      :
Sara Hensley      :
2575 Burnt Hickory Drive, NW  :
Marietta, GA 30064      :
      :
          Plaintiffs,  :
      :
v.      :
      :
SYRIAN ARAB REPUBLIC  :
Damascus, SYRIA      :
      :
and      :
      :
Syrian Military Intelligence  :
(al-Mukhabarat al-`Askariya)  :
Syrian Ministry of Defense  :
Omayad Square      :
Damascus, Syria      :
      :
and      :
      :
President Bashar al-Asad  :
Damascus, SYRIA      :

RECEIVED

JAN 1 1 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

```
                                        :
and                                     :
                                        :
General `Asif Shawkat                   :
Kafar Susa Roundabout                   :
Damascus, SYRIA                         :
                                        :
                                        :
                          Defendants    :
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :
```

### REDACTED COMPLAINT

Plaintiffs bring this action pursuant to the provisions of 28 U.S.C. § 1602, *et seq*.

This action arises out of the kidnapping, torture and beheadings of Olin Eugene "Jack"

Armstrong, Jr. ("Jack Armstrong") and Jack Hensley in Iraq on September 20 and 21,

2004 (respectively).  The murders of Jack Armstrong and Jack Hensley were carried out

by groups of terrorists operating in Iraq with the material support provided by the Syrian

Arab Republic (hereinafter "Syria") as a state-sponsor of terrorism and the other

Defendants who supported these acts of terrorism against United States citizens.

Plaintiffs state in support of their Complaint and allege as follows:

### THE PARTIES

#### A.     **The Plaintiffs**

1.     This action is brought by the Plaintiffs, by and through their counsel, in the

individual capacity of each Plaintiff and, as appropriate, in the capacity of each as

Administrator, Executor or Personal Representative of the estate more particularly

described in the caption of this action, for their own benefit, for the benefit of each

particular estate, and for the benefit and on behalf of all those legally entitled to assert a

2

claim under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602 *et seq.*, and state common law and statutory law.

2.      Plaintiff Francis Gates at all times relevant hereto is and was the mother of Jack Armstrong. Plaintiff Francis Gates is a citizen of the United States of America who resides in the State of Michigan. Plaintiff Francis Gates can sue and be sued in this Court. Plaintiff Francis Gates brings this suit in her personal capacity and in her capacity as personal representative of the estate of Jack Armstrong.

3.      Plaintiff Jan Smith at all times relevant hereto is and was the sibling of Jack Armstrong. Plaintiff Jan Smith is a citizen of the United States of America. Plaintiff Jan Smith can sue and be sued in this Court.

4.      Plaintiff Pati Hensley at all times relevant hereto is and was the wife of Jack Hensley. Plaintiff Pati Hensley is a citizen of the United States of America who resides in the State of Georgia. Plaintiff Pati Hensley can sue and be sued in this Court. Plaintiff Pati Hensley brings this suit in her personal capacity and in her capacity as personal representative of the estate of Jack Hensley.

5.      Plaintiff Sara Hensley at all times relevant hereto is and was the daughter of Jack Hensley. Plaintiff Sara Hensley is a citizen of the United States of America who resides in the State of Georgia. Plaintiff Sara Hensley can sue and be sued in this Court.

**B.      The Defendants**

6.      Defendant Syria is a foreign state that has been designated and remains designated as a state sponsor of terrorism pursuant to section 60 of the Export Administration Act of 1979, 50 U.S.C. App. § 2405, section 620(A) of the Foreign Assistance Act of 1961, 22 U.S.C. § 2371, and section 40 of the Arms Export Control

3

Act, since December 29, 1979. Syria, at all times pertinent to this action, provided material support and resources to the al-Tawhid wal-Jihad and Abu Mus`ab al-Zarqawi. Al-Tawhid wal-Jihad and Abu Mus`ab al-Zarqawi, at all times pertinent to this action, have operated in, among other places Iraq and Syria, carrying out both military operations and a campaign of terrorism. Syria, through its actions, is and/or has been a sponsor of al-Tawhid wal-Jihad and Abu Mus`ab al-Zarqawi, within the meaning of 28 U.S.C. § 1605(a)(7) and the Flatow Amendment, by providing them with funding, direction and/or training for their terrorist activities.

7.    Defendant Syrian Military Intelligence is the principal Syrian intelligence service through which Syria sponsored al-Tawhid wal-Jihad and Abu Mus`ab al-Zarqawi, which caused the terrorist acts described below.

8.    Defendants President Bashar al-Asad and General `Asif Shawkat performed acts within the scope of their offices, which caused the extrajudicial killings and personal injuries resulting from the act of terrorism described herein. Accordingly, said Defendants are jointly and severally liable to Plaintiffs.

9.    Syria as well as the Syrian Military Intelligence, President Bashar al-Asad and General `Asif Shawkat, are directly and/or vicariously responsible for the actions of their co-defendants because they sponsored, supplied, facilitated and supported the al-Tawhid wal-Jihad organization and Abu Mus`ab al-Zarqawi. Accordingly, Defendants are jointly and severally liable to Plaintiffs.

## JURISDICTION AND VENUE

10.    Jurisdiction over the subject matter of this case arises under 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2) and 1605.

11.    Syria and the Syrian Military Intelligence are subject to suit in the courts of the United States as sponsors of and participants in Abu Mus`ab al-Zarqawi's and the al-Tawhid wal-Jihad organization's activities pursuant to the Foreign Sovereign Immunities Act, as amended, (hereinafter "FSIA") 28 U.S.C. § 1605(a)(7), and related statutes.

12.    Defendants President Bashar al-Asad and General `Asif Shawkat are subject to suit in the courts of the United States pursuant to the FSIA, 28 U.S.C. § 1605(a)(7), and related statutes.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign state may be brought in the United States District Court for the District of Columbia.

### THE MURDER OF JACK ARMSTRONG AND JACK HENSLEY

14.    Jack Hensley was a caring husband, father, and an American citizen.

15.    Jack Armstrong was a caring son, brother, and an American citizen.

16.    In September of 2004, Jack Armstrong and Jack Hensley were non-combatants, employed by a private sub-contractor as civilian project managers in Baghdad, Iraq.

17.    Their employer was part of an American consortium providing support and logistical services pursuant to contracts with the Defense Department and/or United States Air Force.

18.    These men were not hired to act as armed security forces or bodyguards. Their responsibilities included providing technical and operational assistance to support

forces and resources for the military in non-combat environments in Baghdad, Iraq. Prior to their kidnapping and murder, they lived in typical, Iraqi residential civilian housing. The house was two levels with a gated wall surrounding it.

19.    The morning of the kidnapping, the Iraqi guards assigned to protect the workers' house did not appear at the compound.

20.    As was his daily ritual, early in the morning Armstrong walked out to start the generator for the compound.

21.    He was surrounded by militants and subdued. They stormed the house and took the remaining occupants hostage.

22.    For many days, Armstrong and Hensley were kept in captivity, in constant fear for their lives and distraught for their families.

23.    They were humiliated. They became malnourished. Hensley was denied medical assistance for a chronic illness.

24.    After days of suffering and fearing for their lives, they were brutally murdered by decapitation.

25.    On September 20, 2004, Abu Mus`ab al-Zarqawi beheaded Jack Armstrong.

26.    On September 21, 2004 Abu Mus`ab al-Zarqawi beheaded Jack Hensley.

27.    Abu Mus`ab al-Zarqawi's group Al-Tawhid wal-Jihad claimed it beheaded Jack Armstrong and Jack Hensley because it was their job to work with the "occupation forces."

28.    The terrorists documented themselves beheading Hensley and Armstrong. The terrorists published video footage of their murders for propaganda purposes. It is widely known the video tape is on the internet and is available for immediate

6

downloading and viewing to the general public. It is known al-Zarqawi himself performed each beheading.

29.    Abu Mus'ab al-Zarqawi and al-Tawhid wal-Jihad murdered these innocent men and exploited their horrifying deaths in order to terrorize and further embarrass the United States.

30.    These were and are the political goals of the Syrian regime in Iraq.

## DEFENDANTS' SPONSORSHIP AND SUPPORT FOR Al-ZARQAWI AND AL-TAWHID WAL-JIHAD

31.    Abu Mus'ab al-Zarqawi (Ahmad Fadil Nazzal al-Khlaliyah) fled Afghanistan to Iran (he was headquartered in Heart, which is close to the Iranian border) after the U.S. began its War on Terrorism on October 7, 2001. Al-Zarqawi entered Iran in early January 2002, and when he tried to organize his followers who fled with him, he was arrested and imprisoned for a few weeks (February - March 2002), but he was released as he had a valid Syrian passport issued by the Syrian authorities.

32.    When Iran realized that al-Zarqawi worked for Syria, he was released because Syria is Iran's closest ally and the two countries have been partners in terrorism since the early 1980s. Also, if al-Zarqawi already had a Syrian passport then this meant that he had been working for Syria for some time. Al-Zarqawi left Iran for Syria via Iraq.

33.    As al-Zarqawi had sustained some injuries during the U.S bombing of Afghanistan, there is some evidence that he stayed briefly in a major Baghdad hospital. Al-Zarqawi was physically in Syria from May to September 2002 where he plotted to assassinate the head of the U.S. AID office in Amman, Jordan. The plot was successful and Lawrence Foley was assassinated on October 28, 2002.

34.    When the war on Iraq started in March 2003, al-Zarqawi's coordination with Syria became even more vital for the insurgency in Iraq. In the words of the former defense minister of Iraq, Sa`dun al-Dulaimi: "We know the terrorists have no other gateway into Iraq but Syria." Syria furnished various kinds of material support, within the meaning of 28 U.S.C. § 1605(a)(7), including, but not limited to:

      a.  the recruits of al-Zarqawi's al-Tawhid wal-Jihad organization received weapons in Syria and then they were smuggled into Iraq with the full knowledge of the Syrian security services;

      b.  funds raised by al-Zarqawi's financial network in various Arab countries, especially in Jordan (Al-Zarqawi's native country), and Saudi Arabia were funneled through Syria; and

      c.  evidence elicited from captured jihadists as well as from other very reliable sources show clearly that many recruits for al-Zarqawi's organization were trained in Syrian military barracks and were given logistic support from the Syrian military security apparatus headed by General `Asif Shawkat, President Bashar al-Asad's brother-in-law and the second-most-powerful official in Syria.

35.    There are more than a dozen security services in Syria, some overlapping in their domains, to make sure that the whole of Syrian territory is covered. These security services answer directly to President Bashar al-Asad, his brother General Maher al-Asad, commander of the Syrian Republican Guard and his brother-in-law General `Asif Shawkat.

36.    Syria is a dictatorship and the security services can not and do not act on the scale required to facilitate, coordinate and support the insurgency in Iraq, al-Zarqawi or al-Tawhid wal-Jihad without President Bashar's explicit authorization.

37.    The comfort and safe haven provided Syria and its security services allowed al-Zarqawi to move back and forth between Iraq and Syria at will.

38.    When al-Zarqawi's terrorist group, al-Tawhid wal-Jihad, beheaded Eugene "Jack" Armstrong and Jack Hensley respectively on September 20 and 21, 2004, al-Zarqawi himself was involved in these executions. He was physically then in Iraq, but Syria has remained his haven. Al-Zarqawi operated by staying at the edges of the urban centers and close to the desert for escape routes. Therefore it is likely that he occasionally commanded his al-Tawhid wal-Jihad from within the Syrian borders.

39.    Syria regarded al-Zarqawi's terrorist network as indispensable for Syrian interests in the region. Syria fully supported the insurgency in Iraq to inflict heavy causalities on the U.S. forces in Iraq so that the U.S. would be compelled to withdraw in a humiliating manner from Iraq. This would make it more difficult than ever for the U.S to intervene to change the regimes in Syria or in Iran, Syria's close ally. By fully supporting the insurgency in Iraq and especially al-Zarqawi's network, Syria has gained in prestige and stature in the Arab and Islamic worlds.

40.    Syria also supported the insurgency to protect itself against the spread of American democracy and the threat of a possible American invasion from Iraq. Paranoia descended upon Damascus and the Syrian regime after Iraq collapsed like a house of cards in the face of the American invasion. The United States Army was now positioned next door with the explicit goal of spreading democracy to a neighborhood of tyrannical

regimes, such as the dictatorship that ruled over Syria. Various US policy makers made and continue to make statement regarding the wisdom of sending the troops into Damascus next. "'There's got to be a change in Syria', [Paul] Wolfowitz said in April, adding that the government was a 'strange regime, one of extreme ruthlessness.' At the same time, another prominent conservative closely associated with Wolfowitz and [Richard] Perle, in particular, former CIA director James Woolsey, was widely quoted on television as saying that the 'war on terrorism' should be seen as 'World War IV' that should include as targets 'fascists of Iraq and Syria.'" Jim Lobe, New Syria Legislation Shows Neocons Still in Charge, Foreign Policy in Focus, (October 13, 2003), http://www.fpif.org/commentary/2003/0310syria_body.html.

41.    The United States Department of State in its 2004 Patterns of Global Terrorism concluded al-Zarqawi's group al-Tawhid wal-Jihad, aka QJBR, beheaded Jack Armstrong on September 20, 2004 and Jack Hensley on September 21, 2004. The United States government also refers to QJBR as al-Qaida in Iraq, aka AQI. The report also found Syria continues to embrace terrorism as an instrument of policy. The report further noted Jordanian intelligence officials had intercepted AIQ agents who were trying to enter Jordan from Syria to participate in a campaign of terrorism against Jordan.

42.    The United States Department of State in its 2005 Patterns of Global Terrorism concluded Syria was a "facilitation hub for terrorists operating in Iraq . . ."

43.    The provision of material support for al-Tawhid wal-Jihad, a known terrorist organization, by the government of Syria, acting directly and by and through their individual governmental leaders and representatives as named in the Complaint, and by other representatives of the government, constitute violations of applicable and numerous

United States laws, thereby rendering the government of Syria and its security agencies, and their individual governmental representatives named as Defendants herein, jointly and severally liable for their illegal acts and deeds.

## COUNT I – BATTERY

### (Under State Common Law)

44.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

45.    On September 16, 2004, members of the al-Tawhid wal-Jihad willfully, violently and forcefully committed terrorist acts at the workers' compound in Iraq with the express purpose of inflicting severe pain and suffering and death. Jack Armstrong and Jack Hensley were present at the compound and were accordingly seized against their will. The willful, wrongful and intentional acts of al-Tawhid wal-Jihad, which were sponsored by Syria, as well as the Syrian Military Intelligence, constituted a battery upon the person(s) of Jack Armstrong and Jack Hensley, causing injury to them as set forth above.

46.    Defendants President Bashar al-Asad and General `Asif Shawkat performed acts within the scope of their offices which sponsored the al-Tawhid wal-Jihad's terrorist activities, including but, not limited to the attack on the workers' compound.

47.    As a direct and proximate result of the willful, wrongful and intentional acts of al-Zarqawi and the al-Tawhid wal-Jihad members, whose acts were sponsored by Syria, as well as the Syrian Military Intelligence, President Bashar al-Asad, General `Asif Shawkat, the estates of Jack Armstrong and Jack Hensley were injured in that they

11

endured extreme mental anguish, physical injury and pain and suffering, all to their damage.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate of Jack Armstrong and Jack Hensley, demands that judgment be entered, jointly and severally, against the Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **TEN MILLION ($10,000,000.00) DOLLARS** for each of them, on this Count I, and their costs expended.

## COUNT II – ASSAULT

### (Under State Common Law)

48.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in paragraphs in all the forgoing paragraphs as if fully set forth herein.

49.    During the attack on the workers' compound and thereafter until the beheadings, the al-Tawhid wal-Jihad terrorists intentionally and willfully put Jack Armstrong and Jack Hensley in fear for their lives and apprehension of harm and injury as a direct result of the terrorists' actions in brandishing and firing weapons and explosives, and the physical and mental abuse they inflicted upon them.

50.    As a direct and proximate result of the willful, wrongful and intentional acts of al-Zarqawi and the al-Tawhid wal-Jihad members, whose acts were sponsored by Syria, as well as the Syrian Military Intelligence, President Bashar al-Asad, and General `Asif Shawkat, the estates of Jack Armstrong and Jack Hensley were injured in that they endured extreme mental anguish, physical injury and pain and suffering, all to their damage.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estates of Jack Armstrong and Jack Hensley, demand that judgment be entered, jointly and severally, against the Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **TEN MILLION ($10,000,000.00) DOLLARS** for each of them, on this Count II, and their costs expended.

## COUNT III – FALSE IMPRISONMENT AND KIDNAPPING

### (Under State Common Law)

51.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

52.    On September 16, 2004, members of the al-Tawhid wal-Jihad willfully, violently and forcefully committed terrorist acts at the workers' compound in Iraq with the express purpose of inflicting severe pain and suffering and death. Jack Armstrong and Jack Hensley were present at the compound and were accordingly seized and held for several days against their will. The willful, wrongful and intentional acts of al-Tawhid wal-Jihad, which were sponsored by Syria, as well as the Syrian Military Intelligence, constituted false imprisonment and kidnapping upon the person(s) of Jack Armstrong and Jack Hensley, causing injury to them as set forth above.

53.    Defendants President Bashar al-Asad and General `Asif Shawkat performed acts within the scope of their office which sponsored al-Zarqawi and the al-Tawhid wal-Jihad's terrorist activities, including but, not limited to the attack on the workers' compound.

13

54.    As a direct and proximate result of the willful, wrongful and intentional acts of al-Zarqawi and the al-Tawhid wal-Jihad members, whose acts were sponsored by Syria, as well as the Syrian Military Intelligence, President Bashar al-Asad, and General `Asif Shawkat, the estates of Jack Armstrong and Jack Hensley were injured in that they endured extreme mental anguish, physical injury and pain and suffering, all to their damage.

**WHEREFORE,** Plaintiffs, and each of them, on behalf of the estate of Jack Armstrong and Jack Hensley, demands that judgment be entered, jointly and severally, against the Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **TEN MILLION ($10,000,000.00) DOLLARS**, on this Count III, and their costs expended.

## COUNT IV INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, INCLUDING SOLATIUM

### (Under the Flatow Amendment and State Common Law)

### (As to All Plaintiffs)

55.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in all of the forgoing paragraphs as if fully set forth.

56.    The acts of terrorizing, holding captive, and eventually beheading Jack Armstrong and Jack Hensley and each and all of the acts set forth above, constituted extreme and outrageous conduct with the intent to inflict emotional distress, including solatium, upon them and their members of their families. Further these acts were undertaken for the purpose of causing mental duress and suffering, including solatium, upon the members of their families.

14

57.    As a direct result and proximate result of the willful, wrongful and intentional acts of al-Zarqawi and the al-Tawhid wal-Jihad, whose acts were sponsored by Syria as well as the Syrian Military Intelligence, President Bashar al-Asad, and General `Asif Shawkat, the estates of Jack Armstrong and Jack Hensley, and their families, as above set forth, were each caused to suffer permanent and severe emotional distress.

58.    The manner of death was uniquely barbaric in this case.

59.    The knowledge that these horrific deaths exist on video on the internet leaves a permanent, indelible mark upon the psyche of the loved ones of the deceased.

**WHEREFORE,** Plaintiffs, individually and on behalf of the estate of Jack Armstrong and Jack Hensley, demand that judgment be entered, jointly and severally, against Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **TEN MILLION ($10,000,000.00) DOLLARS** for each of them, on this Count III, and their costs expended;

## COUNT V – ACTION FOR WRONGFUL DEATH

### (Under State Common Law and State Statutory Law)

60.    Plaintiff Francis Gates, as the Personal Representative of the Estate of Jack Armstrong, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

61.    Jack Armstrong's death was caused by a willful and deliberate act of extrajudicial killing as he was murdered by members of the al-Tawhid wal-Jihad during the course of their terrorist act of murder against him, as an American citizen, acting

under the sponsorship of defendants Syria as well as the Syrian Military Intelligence, President Bashar al-Asad and General `Asif Shawkat.

62.    Plaintiff Pati Hensley, in her capacity as the representative of the Estate of Jack Hensley, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth herein.

63.    Jack Hensley's death was caused by a willful and deliberate act of extrajudicial killing as he was murdered by members of al-Zarqawi and the al-Tawhid wal-Jihad during the course of their terrorist act of murder against him, as an American citizen, acting under the sponsorship of defendants Syria as well as the Syrian Military Intelligence, President Bashar al-Asad and General `Asif Shawkat.

**WHEREFORE,** Plaintiff Francis Gates, as the Personal Representative of the Estate of Jack Armstrong, and Plaintiff Pati Hensley, in her capacity as the representative of the Estate of Jack Hensley, demand that judgment be entered, jointly and severally, against Defendants for the damages they suffered, including, but not limited to, pecuniary losses, which include, but are not limited to, the loss of future earnings, and funeral and burial expenses, in the amount of **TEN MILLION ($10,000,000.00) DOLLARS** on this Count IV, and their costs expended.

## <u>COUNT VI – ACTION FOR SURVIVAL DAMAGES</u>

### (Under State Common Law and State Statutory Law)

64.  Plaintiff Francis Gates, as the Personal Representative of the Estate of Jack Armstrong, repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs if fully set forth.

65.  Before his death, Jack Armstrong suffered extreme bodily pain and mental anguish and suffering, entitling his estate to compensatory damages.

66.  Plaintiff Pati Hensley, in her capacity as the representative of the Estate of Jack Hensley repeats, realleges and incorporates by reference those facts and allegations set forth in each of the foregoing paragraphs if fully set forth.

67.  Before his death, Jack Hensley suffered extreme bodily pain and mental anguish and suffering, entitling Pati Hensley to compensatory damages as Jack Hensley's wife and the person to whom recovery for his death belongs.

68.  Defendants Syria as well as the Syrian Military Intelligence, President Bashar al-Asad and General `Asif Shawkat is directly and/or vicariously responsible for the actions of their co-defendants because they acted as sponsors of al-Zarqawi and the al-Tawhid wal-Jihad.

**WHEREFORE,** Plaintiff Francis Gates, as the Personal Representative of the Estate of Jack Armstrong, and Plaintiff Pati Hensley, in her capacity as the representative of the Estate of Jack Hensley, demand that judgment be entered, jointly and severally, against Defendants for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, and pecuniary losses, in the amount of **TEN MILLION ($10,000,000.00) DOLLARS** on this Count V, and their costs expended.

## COUNT VII – ACTION FOR CONSPIRACY

### (Under State Common Law)

### (As to All Plaintiffs)

69.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

70.    Defendants Syria, as well as the Syrian Military Intelligence, President Bashar al-Asad and General `Asif Shawkat, did knowingly and willfully conspire with and/or agree to sponsor a terrorist organization within the meaning of 28 U.S.C. § 1605 (a)(7), which terrorist organization willfully and deliberately committed an act of terrorism, which caused the injuries, and/or death of Plaintiffs

71.    For the reasons stated above, and having conspired to sponsor the terrorist organization which willfully and deliberately committed an act of terrorism which caused the injuries and/or death of Plaintiffs, defendants are jointly and severally liable to plaintiffs for all damages in this civil action.

**WHEREFORE,** Plaintiffs, Plaintiff Francis Gates, individually and as the Personal Representative of the Estate of Jack Armstrong, and Plaintiff Pati Hensley individually and in her capacity as the representative of the Estate of Jack Hensley, and Sara Hensley and Jan Smith demand that judgment be entered, jointly and severally, against Defendants in the amount of **TEN MILLION ($10,000,000.00) DOLLARS** for each of them, on this Count VI, and their costs expended.

18

## COUNT VIII – ACTION FOR AIDING AND ABETTING

### (Under State Common Law and State Statutory Law)

### (As to All Plaintiffs)

72.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

73.    Defendants Syria as well as the Syrian Military Intelligence, President Bashar al-Asad and General `Asif Shawkat did knowingly and willfully provide substantial assistance and sponsor a terrorist organization within the meaning of 28 U.S.C. § 1605(a)(7), which terrorist organization willfully and deliberately committed an act of terrorism, which caused the injuries, and/or death of Plaintiffs.

74.    For the reasons stated above, and having aided and abetted a terrorist organization which willfully and deliberately committed an act of terrorism which caused the injuries and/or death of Plaintiffs, all defendants are jointly and severally liable to plaintiffs for all damages in this civil action.

WHEREFORE, Plaintiff Francis Gates, individually and as the Personal Representative of the Estate of Jack Armstrong, and Plaintiff Pati Hensley individually and in her capacity as the representative of the Estate of Jack Hensley and Sara Hensley and Jan Smith demand that judgment be entered, jointly and severally, against Defendants in the amount of **TEN MILLION ($10,000,000.00) DOLLARS** for each of them, on this Count VII, and their costs expended.

## COUNT IX – FLATOW AMENDMENT

### (P.L. 104-208, 110 Stat. 3009-172)

### (As to All Plaintiffs)

75.    Plaintiffs repeat, reallege and incorporate by reference those facts and allegations set forth in each of the foregoing paragraphs as if fully set forth.

76.    The actions of the al-Tawhid wal-Jihad, as above set forth, were intentional and malicious and in willful, wanton and reckless disregard of the rights and well being of Plaintiff Francis Gates, individually and as the Personal Representative of the Estate of Jack Armstrong, and Plaintiff Pati Hensley individually and in her capacity as the representative of the Estate of Jack Hensley.  All of the acts of al-Zarqawi and the al-Tawhid wal-Jihad were facilitated by funding, training, support and sponsorship by Syria, as well as the Syrian Military Intelligence, President Bashar al-Asad and General `Asif Shawkat.

77.    In providing such sponsorship, President Bashar al-Asad and General `Asif Shawkat rendered material support to those actually carrying out the acts above described.  Under the Flatow Amendment, the Plaintiffs are entitled to an award of economic damages, solatium, pain, and suffering, and punitive damages and same is hereby requested against the defendants, jointly and severally, in accordance with the provisions of Flatow Amendment making an official, employee, or agent of a nation which has been designated as a "state sponsor of terrorism under § 6(j) of the Export Administration Act of 1979", liable for economic damages, solatium, pain, and suffering, and punitive damages under the factual circumstances as occurred during the course of committing these heinous and horrible acts of terrorism.

78.     As required by the Flatow Amendment, President Bashar al-Asad and General `Asif Shawkat was acting within the scope of their duties when they supplied, facilitated or authorized the provision of material support to al-Zarqawi and the al-Tawhid wal-Jihad and the execution of its terrorist attacks.

**WHEREFORE,** Plaintiff Francis Gates, individually and as the Personal Representative of the Estate of Jack Armstrong, and Plaintiff Pati Hensley individually and in her capacity as the representative of the Estate of Jack Hensley, demand that judgment be entered, jointly and severally, against Defendants in the amount of.**THREE HUNDRED MILLION US DOLLARS ($300,000,000.00)** for each of them, on this Count VIII, and their costs expended.

The award of punitive damages, as requested, is to punish President Bashar al-Asad and General `Asif Shawkat for their conduct in supporting terrorism and the terrorist murderous acts described herein, and to send a message to them and others that the United States of America and its citizens respond to the lawless acts of terror and murder with the application of orderly justice.

## ADDITIONAL RELIEF REQUESTED

Plaintiffs request leave of Court to amend this Complaint as the interests of justice require.

Dated: January 11, 2008

Respectfully Submitted,

Steven R. Perles (No. 326975)
Edward MacAllister    (No. 494558)
THE PERLES LAW FIRM, PC
1146 19th Street, NW, 5th Floor
Washington, DC 20036
Telephone: 202-955-9055
Telefax:    202-955-3806

Roy Barnes (GA Bar #039000)
John Salter (GA Bar #623325)
The Barnes Law Group
P.O. Box 489
Marietta, Georgia 30061
Telephone:    770-419-8505
Telefax:      770-590-8958

Gaeton L. Drexinger (GA Bar # 230310)
Gaeton L. Drexinger, P.C.
145 Church Street, Suite 101
Marietta, GA 30060
Telephone:   770-419-0445
Telefax:     770-424-1408