UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FRANCIS GATES, et al.

Plaintiffs,

v.

SYRIAN ARAB REPUBLIC, et al.

Defendants.

CASE NUMBER: 1:06CV01500
(RMC)
**CASE SEALED**

### PLAINTIFFS' MEMORANDUM REGARDING WITNESS IDENTITIES, THE OPENESS OF THE JUDICIAL PROCEEDINGS AND THE SEALING / REDACTION OF LIMITED PORTIONS OF JUDICIAL RECORDS

On December 17, 2007, counsel for the Plaintiffs attended a status conference before the Court in this matter. The Court inquired whether the proceedings could remain under seal in view of the public's interest in open proceedings and how that would effect the final order and judgment, which must be served on the Defendants under 28 U.S.C. § 1608(e). The Plaintiffs hereby file this Memorandum in response to the Court's query.

Plaintiffs suggest that the public right of access could be balanced by a narrow exercise of the Court's supervisory power through the use of redactions and pseudonyms in the trial transcript and final order on damages and liability to avoid disclosure of the identities of witnesses who may be

endangered by such a disclosure. The Plaintiffs also request that the courtroom be closed to the public during the testimony of those witnesses.

### I. INTRODUCTION

In response to an earlier request by Plaintiff's Counsel, in light of concerns for the safety of a ███████████████████████████ ███████ the record in this case was sealed and the case was removed from the ECF system. Moreover, Plaintiffs' counsel has expressed further concerns—which are generally in the nature of the personal safety of witnesses—justifying the continued partial sealing of this record.

At a status conference on Monday, December 17, 2007, this Court—not imprudently—asked Plaintiffs' counsel to revisit how the Court should handle such concerns in anticipation of the upcoming trial proceedings. Specifically, the Court expressed a concern as to whether this Court has the authority to fully close these proceedings to the public and how the final order and judgment might be written. Through this Memorandum, Plaintiffs hope to address the Court's reasonable concerns and to satisfy the Court that there is a proper way of proceeding that balances legitimate concerns justifying continued protection of witness identities against the long-standing tradition of open court proceedings.

[redacted]

## II. LEGAL BACKGROUND

Though a qualified right of the public and press to attend criminal trials is well-established, a corresponding right to attend civil trials or proceedings has never been specifically upheld by the Supreme Court. This difference flows from a constitutional distinction, found in the Sixth Amendment, which enshrines a right, "in all criminal prosecutions," of American citizens "to a speedy and public trial."

In contrast, in civil cases courts have recognized a broad array of interests meriting protection against public access to civil cases, such as personal privacy, the shielding of trade secrets, promotion of the rehabilitation of juvenile offenders, and, relevant here, the personal safety of witnesses and the parties, themselves.

This is not to say that the tradition of openness in judicial proceeding is one to be lightly cast aside. It should not be. It has been frequently stated that a trial is a public event. That trials should, as a general rule, be public is a corollary of democratic government. But the presumption of open judicial proceedings—it has been firmly established—is not absolute.

What are the principles that govern a decision to close a judicial proceeding and/or restrict access to the judicial record? This question is most frequently examined in the context of the right of the media to observe and report judicial proceedings. It is generally recognized that the right of the media to observe and report judicial proceedings is not a special privilege, but rather is equivalent to the right of the public in general to have open access to public trials. The press enjoys this right through its individual representatives and because of its surrogate role for the public. Thus, in civil actions generally, courts have held that the press has a presumptive right to attend civil trials and proceedings and that in order to limit the access to a civil trial there must be a showing that its denial serves an important governmental interest and that there is no less restrictive way to serve that governmental interest.

### A.  Access to Court Proceedings

The physical safety of a witness or trial participant is a legitimate reason for closure of a civil proceeding to the press and public. A case involving injuries sustained when a bomb exploded on an airplane provides an illustrative example. In *Ospina v. Trans World Airlines, Inc.*, 975 F.2d 35 (2d Cir. 1992), the evidence necessarily delved into the particular security measures in connection with the search of cabin and cockpit areas of

airplanes. The Second Circuit noted that "[t]he importance of the information in this case to the security and safety of commercial airlines and their passengers requires extraordinary treatment." 975 F.2d at 36. In *Ospina*, the United States government entered a limited appearance for the purpose of "expressing its concerns about the disclosure, discussion and evaluation of airline security materials." *Id.* These rulings by the district court were recited by the Second Circuit without disapproval. *Ospina* provides a precedent for this Court in handling issues touching upon the personal security of witnesses and/or parties:

> So as not to jeopardize the safety of the traveling public, the district court ordered that the ***trial be closed to the public*** at such times as sensitive, anti-terrorist airline security information was to be ***disclosed, discussed or evaluated.*** Although the press had the right to review daily copy of the trial transcript, the United States received an initial opportunity to redact those portions of the transcript containing sensitive airline security information. At the conclusion of the trial, some exhibits were made available to the public while others—namely, those concerning sensitive information—were filed under seal.

*Ospina*, 975 F.2d at 36 (emphasis supplied). While the Second Circuit did not engage in a substantive analysis of legal authority on the subject, the logic that the common law's traditional presumption of public proceedings must yield when necessary to avoid injury to third persons cannot seriously be doubted. Indeed, the tenor of the *Ospina* opinion suggests that the district court's actions were not regarded by the Second Circuit as controversial.

**B.     Access to Judicial Records**

The trial court has wide discretion in choosing how to balance public policy interests against countervailing privacy interests. "Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 598 (1978). There being no single rule for choosing between openness and restriction in all cases, it has long been recognized that this task falls to the discretion of the court in light of the relevant facts and circumstances of each particular case. *Nixon*, 435 U.S. at 599. This "balancing" approach governs the Court's consideration of access to judicial records, which includes not only paper documents, but also items such as audio and videotapes.

A leading case is one from the Court of Appeals for the District of Columbia Circuit, *In re Application of National Broadcasting Company*, 653 F.2d 609 (D.C. Cir. 1981) (hereinafter "*In re Application of NBC*"). This opinion recited a host of generally accepted legal principles that should inform this Court's decision. First, the existence of a common law right to inspect and copy judicial records is "indisputable." 653 F.2d at 612. Second, "[i]t is equally clear, however, that the right to inspect and copy judicial records is not absolute." *Id.* at 613; *see also Nixon v. Warner*

*Communications, Inc.*, 435 U.S. at 598.[1] Third, the balancing of open access against various rationales that justify restrictions is a decision that "rests in the sound discretion of the trial court," subject only to review by appellate courts for manifest abuse. *Id.* at 613.

Most important, however, is that the Court of Appeals listed some interests that, under appropriate circumstances, may require restrictions upon the public's right of access to judicial records:

> The public has in the past been excluded, temporarily or permanently, from court proceedings or the records of court proceedings to protect private as well as public interests: to protect trade secrets, ***or the privacy and reputation of victims of crimes, as well as to guard against risks to national security interests***, and to minimize the danger of an unfair trial by adverse publicity.

*In re Application of NBC*, 653 F.2d at 613 (emphasis supplied). Of these interests, the Court of Appeals went on to call the risk of possible injury to innocent third persons as one of the more important considerations for district courts to take into account. 653 F.2d at 619. "We agree fully with Judge Devitt's decision, and admit that we find the interest in avoiding injury to innocent third persons to be the most significant interest identified by the district court which weighs against the broadcaster's application." *In*

---

[1] Though it involves statutory exemptions, Judge Lamberth's opinion in the case of *Judicial Watch, Inc. v. United States Department of Commerce*, 337 F. Supp. 2d 146 (D.D.C. 2004), provides an example of the interplay between the public's right to know, codified in the Freedom of Information Act, and the importance of exemptions for things such as national security.

*re Application of NBC*, 653 F.2d at 620. Clearly then, courts recognize the possibility of reprisal, injury, or other personal safety concerns as strong justification for placing restrictions upon the public's right of access to judicial records. *See also Haber v. Evans*, 268 F. Supp. 2d 507, 512 (E.D. Pa. 2003) (justifying redaction of court records to conceal witness identities on grounds that "[d]isclosure could even place certain confidential informants' safety in jeopardy). By analogy and extension, the rationale of *In re Application of NBC* also signals that the Court of Appeals would uphold reasonable restraints upon public access where the same is advisable to protect witnesses and/or parties against injury or threat.

Furthermore, concerns about witness intimidation or reprisal in terrorism cases have, in the past, been taken seriously by the Court of Appeals of this Circuit. For example, in *Center for National Security Studies v. U.S. Department of Justice*, 331 F.3d 918 (D.C. Cir. 2003), the Court of Appeals considered a demand for release of names of persons detained by federal authorities investigating the September 11, 2001 terrorist attack. In restricting disclosure of such information, the Court of Appeals relied heavily upon the concern that disclosure was reasonably likely to interfere with enforcement proceedings by potentially enabling terrorist groups to impede investigation and by discouraging already-released

detainees or never-detained persons from cooperating with the investigation. 331 F.3d at 929. In this case, there is also a reasonable concern that persons may choose not to cooperate as witnesses in cases like this without sufficient protections from disclosure that could mean reprisal, intimidation or personal harm.[2] Indeed, public diatribes on the floor of the Iranian parliament against some of the decisions from this Circuit against Iran have also been recorded. The Defendants in these types of actions do take note of these decisions, which supports Plaintiffs' need and desire to avoid disclosure of certain witnesses.

Courts in this circuit have used pseudonyms before in order to avoid endangering witnesses through public disclosure of their identity and participation. In *Peterson v. Islamic Republic of Iran* Judge Royce Lamberth referred to a witness by use of a pseudonym in his opinion and order that adjudicated the liability of the Islamic Republic of Iran for its

---

[2] Cases that seek to adjudicate liability for acts of terrorism have inherent publicity issues aside from the unique issue raised by Plaintiffs' counsel prior to the Court's order to seal the proceeding. One possible result of the increased public profile are violent and/or disturbed actors who are not agents of a defendant foreign sovereign but are sympathetic to the Defendants in this case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Such independent actors are even less constrained by rules of conduct than sovereign actors and are therefore inherently less predictable and more dangerous.

responsibility for the 1983 destruction of the United States Marine barracks by suicide truck bomber. 264 F. Supp. 2d 46, 55 (D.D.C. 2003). The *Peterson* court established the reliability of the witness through the testimony of another witness who was also referred to by pseudonym. *Id.* at 55 n.15. The court accepted evidence under seal that established the bona fides of the second witness and therefore the first as well. *Id.* The *Peterson* court fashioned a compromise to protect the safety of the witnesses by using pseudonyms and took care to specifically establish the authenticity of the witnesses in the *Peterson* order on liability.

An order on liability and damages in this case might use the same methods—protecting witnesses who may live or work in the Middle East in the near future through the use of pseudonyms—to preserve the public access to the evidence the Court will use to reach its decision.

### III. APPLICATION OF THESE LEGAL DOCTRINES TO THIS CASE

#### A. Expert Witnesses

The evidence before the Court will include testimony from individuals who are significant opponents of those who, like Syria, lend aid and support to terrorists. Plaintiffs intend to call several witnesses as experts. Some of them have testified against terrorists in trial proceedings before and expect to again. All of them could travel to the Middle East in the future. Most of

these witnesses have been qualified as experts and given testimony before. The information that forms the basis of their opinion is largely from "open" sources and, in any event, no part of their testimony is expected to require the confidentiality protection in order to protect sources or methods of obtaining information. Therefore, Plaintiffs' counsel believes these witnesses will not require departure from the normal practice of open access to court proceedings.

### B. Fact Witnesses on Liability

[REDACTED]

[REDACTED] Plaintiffs' counsel traveled to the Middle East in order to take a recorded statement from this witness, who lives in the Middle East. Plaintiffs' counsel obtained his statement only upon the condition that his identity would be protected. This person has a legitimate and real concern for his safety. [REDACTED]

[REDACTED] The witness also fears for

[REDACTED]

the safety of his family. He gave testimony to Plaintiffs' counsel only upon the express assurance and condition that his identity be protected for disclosure. For these reasons, Plaintiffs would ask the Court to (1) seal the courtroom during the replay of his recorded statement; (2) redact the identity of the witness in any testimony, or final order, that might be made public; and (3) take all other reasonable and necessary steps to protect the identity of this witness (e.g. using general descriptions or pseudonyms in any proposed order that might be made public).

Plaintiffs also intend to call a former United States Marine who, between May and early summer of 2004, was stationed with Jack Hensley at an American base in Iraq. In addition to knowing Jack Hensley, this witness also can recount the basis for his opinion that Syria endangered Americans in Iraq by supporting insurgents and Al-Qaida in Iraq. After returning from his deployment, this Marine became employed as a civilian contractor to the military, teaching and training about Improvised Explosive Devices. It is possible that his employer might ask this former Marine to return to Iraq to provide this training to American military personnel. This person has a legitimate and real concern for his safety. For that reason, Plaintiffs would ask the Court to (1) seal the courtroom during this testimony; (2) redact this former Marine's name or identifying information from any transcript that

might be made public; and (3) take all other reasonable and necessary steps to protect the identity of this witness (e.g. using general descriptions or pseudonyms in any proposed order that might be made public).

### C. Military Medical Examiner Personnel

Plaintiffs expect to provide the testimony of several witnesses who are employed by the military as medical examiners. These personnel are not stationary. Within the scope of their employment, they are expected to travel to on-sites, including the Middle East and sensitive places where a compromise in security would hinder their ability to accomplish their mission responsibilities. These persons have a legitimate and real concern for their safety.

Second, it is the understanding of Plaintiffs' counsel that the Department of Defense ("DoD") wishes for their testimony and identities to be fully protected. Indeed, in gaining clearance from the DoD to allow these personnel to testify in this case, it was made clear that the sealing of the courtroom proceedings and protection of the identities of these personnel was a significant factor in gaining the DoD's cooperation.

Third, the testimony of these personnel will be graphic and gruesome. There are legitimate privacy reasons justifying the closure of the

proceedings given the sensitivity of this testimony, which will include photographs.

For the foregoing reasons, Plaintiffs would ask the Court to (1) seal the courtroom during testimony of these persons; (2) redact this testimony, in its entirety, from any transcript that might be made public; and (3) take all other reasonable and necessary steps to protect the identity of these witnesses (e.g. using general descriptions or pseudonyms in any proposed order that might be made public).

### D. Damages Witnesses

With one exception, Plaintiffs do not expect the testimony on damages to require closure of the courtroom or special protections of witness identities. To establish damages, Plaintiffs expect to present testimony of an economist via affidavit on the economic damages sustained by the Plaintiffs. Further, Plaintiffs expect to present testimony from family members.



For this reason, Plaintiffs ask the Court take steps to protect this person's identify, including (1) sealing the courtroom during testimony of this person; (2) redact this testimony, in its entirety, from any transcript that might be made public; (3) revising the caption of this case to nominate this person as Plaintiff Jane Doe #1; and (4) take all other reasonable and necessary steps to protect the identity of these witnesses (e.g. using general descriptions or pseudonyms in any proposed order that might be made public).

## IV. CONCLUSION

Plaintiffs respectfully submit this Memorandum. Plaintiffs further ask that, if the Court wishes to open other parts of the judicial record in the future, that Plaintiffs be allowed notice and an opportunity to request redaction of the public record in this case. Given the relatively small number of filings, this should not be a difficult task.

If the Court has further questions regarding this Memorandum or the issues therein, Plaintiffs' counsel is at the Court's disposal.

Dated: December 28, 2007                    Respectfully Submitted,

_John Salter_ by SRP                        _Steven R. Perles_

John F. Salter                              Steven R. Perles (No. 326975)
Ga. Bar No. 623325                          Edward MacAllister (No. 494558)
The Barnes Law Group, LLC                   THE PERLES LAW FIRM, PC
P.O. Box 489                                1146 19th Street, NW, 5th Floor
Marietta, Georgia 30061                     Washington, DC 20036
Telephone: 770-419-8505                     Telephone: 202-955-9055
Facsimile:  770-590-8958                    Facsimile:   202-955-3806

Attorney for Plaintiffs

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of December, 2007, the Defendants have been served, have not entered an appearance or otherwise answered and are in default in this case.

_____
Edward MacAllister