**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **FRANCIS GATES, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-1500 (RMC)** |
| | ) | |
| **SYRIAN ARAB REPUBLIC, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**MEMORANDUM OPINION**

After a three-day evidentiary hearing, this Court entered default judgment imposing

liability and damages under 28 U.S.C. § 1605A, the exception in the Foreign Sovereign Immunities

Act ("FSIA"), 28 U.S.C. § 1602 *et seq.*, that permits suits against state sponsors of terrorism.  The

Syrian Arab Republic ("Syria") had not answered or otherwise defended or appeared, and the Court

entered default judgment against Syria for acts that supported and facilitated the kidnapping, torture,

and murder of Americans Olin Eugene Armstrong and Jack L. Hensley.  *See* Sept. 26, 2008 Mem.

Op. & Order [Dkt. ## 42 & 43], published as *Gates v. Syrian Arab Republic*, 580 F. Supp. 2d 53

(D.D.C. 2008).

On October 24, 2008, Syria filed a notice of appeal and argued to the appellate court

that service was never effected and jurisdiction over it had never been obtained.  On February 23,

2009, on the Circuit Court's own motion, the appeal was placed "in abeyance pending the district

court's decision whether it intends to vacate the default judgment or otherwise grant relief to

Appellants."  Order [Dkt. # 64].  Syria has filed a motion for relief from judgment under Federal

Rule of Civil Procedure 60(b)(4) and (6), arguing that the default judgment should be vacated as void

for lack of service and that other relief should be granted  for various reasons, most importantly

because Plaintiffs did not state or serve a claim under § 1605A and thus should be permitted to

proceed only under the predecessor statute, 28 U.S.C. § 1605(a)(7).  A hearing was held regarding

these matters on August 13, 2009.  As explained below, the Court will deny Syria's request to vacate

judgment.  Even so, the Court would grant other relief under Rule 60(b)(6) if the case were

remanded.

## I.  FACTS

On September 26, 2009, the Court issued a Memorandum Opinion and Order granting

default judgment in favor of Plaintiffs against Syria in the amount of $412,909,587.00.[1]  *See* Sept.

26, 2008 Mem. Op. & Order.  The Court found liability under a federal cause of action pursuant to

§ 1605A:

> [P]laintiffs have heretofore sued leaders of foreign states under the FSIA in their
> personal capacities, advancing claims based on the law of the U.S. State that is or
> was the domicile of the injured party or decedent.  *See, e.g., Dammarell v. Islamic
> Republic of Iran*, No. 01-2224, 2005 WL 756090, at *1  (D.D.C. Mar. 29, 2005)

---

[1] Damages were calculated as follows:

Economic Damages to the Estate of Jack Armstrong –  $1,051,377.00
Pain and Suffering to the Estate of Jack Armstrong – $50,000,000.00
Punitive Damages to the Estate of Jack Armstrong –  $150,000,000.00
Solatium to Francis Gates – $3,000,000.00
Solatium to Jan Smith – $1,500,000.00
Economic Damages to the Estate of Jack Hensley – $1,358,210.00
Pain and Suffering  to the Estate of Jack Hensley – $50,000,000.00
Punitive Damages to the Estate of Jack Hensley – $150,000,000.00
Solatium to Pati Hensley – $3,000,000.00
Solatium to Sara Hensley – $3,000,000.00

*See* Sept. 26, 2008 Order at 1-2.

(holding that where Iran was subject to suit under the state-sponsored terrorism exception to the FSIA, the law of the state of domicile of each of the plaintiffs (or the law of domicile of a decedent) provided the causes of action against the foreign state).

This construct no longer applies. Under § 1605A(c), U.S. citizens who are victims of state-sponsored terrorism can sue a responsible foreign state directly. Significantly, state law no longer controls the nature of the liability and damages that may be sought when it is a foreign government that is sued: Congress has provided the "specific source of law" for recovery. *See Acree*, 370 F.3d at 59.[2] By providing for a private right of action and by precisely enumerating the types of damages recoverable, Congress has eliminated the inconsistencies that arise in these cases when they are decided under state law. *Compare Jackovich v. Gen. Adjustment Bureau, Inc.*, 326 N.W.2d 458, 464 (Mich. App.1982) (under Michigan law, exemplary damages are available but punitive damages are not) *with Todd v. Byrd*, 640 S.E.2d 652, 661 (Ga. App. 2006) (citing OCGA § 51-12-5.1(b), noting that punitive damages are available under Georgia law); *compare* 28 U.S.C. § 1605A(c) (providing for solatium damages under the FSIA) *and* M.C.L.A. § 600.2922(6) (wrongful death damages under Michigan law constitute damages for loss of society and companionship of the deceased) *with Young Men's Christian Ass'n v. Bailey*, 146 S.E.2d 324, 341 (Ga. App. 1965) (wrongful death action under Georgia law does not provide damages for grief of survivors) *and Runyon v. District of Columbia*, 463 F.2d 1319, 1322 (D.C. Cir. 1972) (under D.C. law, a plaintiff in a wrongful death action may not recover for grief); *see Flatow v. Islamic Republic of Iran*, 999 F. Supp. 1, 29-30 (D.D.C. 1998) (noting many differences in the law of solatium among the states).

Sept. 26, 2008 Mem. Op. at 19-20. The Order issued with the Memorandum Opinion dismissed

Plaintiffs' state law claims. Sept. 26, 2008 Order at 2.

The Court also found that service was made on Syria pursuant to 28 U.S.C. §

1608(a)(3) via international courier service. *See* Pls.' Mem. Regarding Service, filed Dec. 28, 2007

[Dkt. # 17]. Syria contends that no service was made.

---

[2] Further, federal courts should look to the Restatement (Second) of Torts, and not state law, to provide content to Congress's express intentions. *See, e.g., Bettis v. Islamic Republic of Iran*, 315 F.3d 325, 333 (D.C. Cir. 2003) (accepting the Restatement (Second) of Torts as "delineat[ing] the controlling substantive law" for intentional infliction of emotional distress "as a proxy for state common law").

## II.  LEGAL STANDARD

Syria moves for relief under Federal Rule of Civil Procedure 60(b)(4) and (6).  *See*
Fed. R. Civ. P. 55(c) (if a default judgment has been entered, it may be set aside in accordance with
Rule 60(b)).  Rule 60(b) provides for motions for relief from a judgment or order due to:  (1)
mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud,
misrepresentation, or other misconduct; (4) void judgment; (5) satisfied, released, or discharged
judgment; or (6) "any other reason justifying relief from the operation of the judgment." Fed. R. Civ.
P.  60(b).  Rule 60(b)(6) is a catch-all provision that gives courts discretion to vacate or modify
judgments when it is "appropriate to accomplish justice," *Klapprott v. United States*, 335 U.S. 601,
614-15 (1949), but it should be applied only in extraordinary circumstances, *Kramer v. Gates*, 481
F.3d 788, 791 (D.C. Cir. 2007) (citing *Ackermann v. United States*, 340 U.S. 193, 199 (1950)).
Relief under Rule 60(b)(6) "is not available unless the other clauses, (1) through (5), are
inapplicable." *Goland v. CIA*, 607 F.2d 339, 372-73 (D.C. Cir. 1979).

The party seeking relief from judgment bears the burden of proof.  *Rufo v. Inmates
of Suffolk County Jail*, 502 U.S. 367, 383-84 (1992); *accord Mazengo v. Mzengi*, 542 F. Supp. 2d
96, 100 n.3 (D.D.C. 2008).  Further, the decision to set aside a default judgment is committed to the
sound discretion of the trial court.  *Jackson v. Beech*, 636 F.2d 831, 835 (1980).  "Given the strong
policies favoring the resolution of genuine disputes on their merits, however, an abuse of discretion
in refusing to set aside a default judgment 'need not be glaring to justify reversal.'"  *Id*. (quoting
*Keegel v. Key West & Carribean Trading Co.*, 627 F.2d 372, 374 (D.C. Cir. 1980)).  "Since a
resolution on the merits is preferable to a judgment by default, a court should liberally allow relief
under [Rule 60(b)]."  *Pulliam v. Pulliam*, 478 F.2d 935, 936 (D.C. Cir. 1973).

When a Rule 60(b) motion is filed more than 10 days after judgment and an appeal

is pending, the district court does not have jurisdiction to grant the Rule 60(b) motion, but it does

have jurisdiction to deny it. *LaRouche v. U.S. Dep't of Treasury*, 112 F. Supp. 2d 48, 52 (D.D.C.

2000).

> When a Rule 60(b) motion and an appeal are pending simultaneously,
> appellate review may continue and "the District Court may consider
> the 60(b) motion, and, if the District Court indicates that it will grant
> relief, the appellant may move the appellate court for a remand in
> order that relief may be granted."

*Id.* (quoting *Hoai v. Vo*, 935 F.2d 308, 312 (D.C. Cir. 1991)).  Thus, a district court may issue an

order on a Rule 60(b) motion during the pendency of an appeal either (1) denying the motion or (2)

indicating that it would grant the motion if it had jurisdiction to do so.

Here, Syria filed its motion for relief from judgment more than 10 days after judgment

and while appeal was pending.  Further, the Circuit has invited the Court to indicate "whether it

intends to vacate the default judgment or otherwise grant relief" to Syria.  *See* Order [Dkt. # 64].

Accordingly, the Court may deny Syria's Rule 60(b) motion or it may indicate to the Circuit that it

would, if the case were remanded, vacate the default or otherwise grant relief.

### III.  ANALYSIS

A court must consider three criteria in deciding whether to set aside a default

judgment:  whether the default was willful; whether setting aside the judgment would prejudice the

plaintiff; and whether the alleged defense is meritorious. *Jackson*, 636 F.2d at 836.  Syria contends

that its default was not willful, that it could not have been because it was never served and it did not

have notice of this suit.  Syria also argues that it has meritorious defenses — that Plaintiffs' claims

raise a nonjusticiable political question, that the claims violate the United Nations Charter, that the

claims are unconstitutional, and that it is entitled to other relief because it could not be held liable

under a statute that came into effect after the default judgment hearing in this case.

### A.  Service on Syria[3]

Syria contends that the default judgment is void because Syria was never served.

Before a court may exercise personal jurisdiction over a defendant, the procedural requirement of

service must be satisfied.  *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 351

(1999).  It is well-established that a judgment entered without personal jurisdiction over a defendant

is void as to that defendant.  *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987).

"Since service of process is the means by which a court asserts jurisdiction to adjudicate the rights

of a party, it is uniformly held that a judgment is void where the requirements for effective service

have not been satisfied."  *Id*.

Syria erroneously argues that Plaintiffs bear the burden of proving service and that

Plaintiffs should be required to prove service beyond a reasonable doubt.  Syria's Rule 60(b) Mot.

[Dkt. # 66] at 3.  Plaintiffs would bear the burden if service had been challenged before judgment,

though such burden would have been by a preponderance of the evidence.  *See Koerner v. United*

*States*, 246 F.R.D. 45, 47 (D.D.C. 2007) (upon challenge to service, plaintiff bears the burden of

proof); *DP Env. Servs., Inc. v. Bertlesen*, 834 F. Supp. 162, 164 (M.D.N.C. 1993) (plaintiff bears

burden to show grounds for personal jurisdiction by a preponderance of the evidence).  As noted

---

[3] While the named Defendants in this case also include Syrian Military Intelligence, President Bashar al-Assad, and Director of Military Intelligence General Asif Shawkat, service upon all Defendants was perfected under 28 U.S.C. § 1608(a), which governs service on foreign states. Because each Defendant is treated as the state itself under the FSIA and because Plaintiffs never served the individuals as such, Syria was the only Defendant against whom damages could be sought and against whom judgment actually was entered. *See* Sept. 26, 2008 Mem. Op. at 16-17.

above, now that judgment has been entered, Syria bears the burden of proving its right to relief under

Rule 60(b). *Rufo*, 502 U.S. at 383-84; *Mazengo*, 542 F. Supp. 2d at 100 n.3.

> FSIA provides for service as follows:
>
> Service in the courts of the United States and of the States shall be made upon a foreign state or political subdivision of a foreign state:
>
> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the foreign state or political subdivision; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint in accordance with an applicable international convention on service of judicial documents; or
>
> (3) if service cannot be made under paragraphs (1) or (2), by sending a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, *by any form of mail requiring a signed receipt*, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned.

28 U.S.C. § 1608(a) (emphasis added).  Service on Syria could not be made pursuant to § 1608(a)(1)

and § 1608(a)(2) because there are no special arrangements between Plaintiffs and Syria or its

agencies and instrumentalities and Syria is not a party to any applicable convention on service of

judicial documents.  Instead, Plaintiffs caused Syria to be served pursuant to § 1608(a)(3).  Plaintiffs

delivered  a copy of the summons and complaint and a notice of suit, together with a translation of

each into the official language of Syria, to the Clerk of Court with a blank DHL Worldwide Express

("DHL") international Airbill.   Pls.' Opp'n to Rule 60(b) Mot. [Dkt. # 67], Affidavit of Edward

MacAllister ("MacAllister Aff.") ¶¶ 3 & 4.  The Clerk completed Airbill Number 778 4577 360 for

DHL delivery to Syria's Ministry of Foreign Affairs.  Certificate of Mailing [Dkt. # 3]; Pls.' Aff. in

Supp. of Default [Dkt. # 8], Ex. A (Airbill).

In order to determine if delivery had been made, on November 9, 2006, counsel for Plaintiffs Edward MacAllister contacted DHL seeking written proof of delivery. MacAllister Aff. ¶ 9. DHL's U.S. Shipment Inquiry Specialist, Jay Bitsuc, sent two emails on November 9 and one on November 10 to DHL's Damascus office indicating that Mr. MacAllister wanted a hard copy proof of delivery (referred to as "HC POD") and a letter from DHL stating that the consignee received the package. MacAllister Aff., Ex. 1 [Dkt. # 67-3] at 7-9. On November 11, DHL's Damascus office sent an email to Mr. Bitsuc stating, "Rcvd yr rqst, plz hold till Monday fr POD Rgds Talin," *i.e.*, "Received your request, please hold until Monday for proof of delivery. Regards, Talin." *Id*. at 10. On November 13, 2006, DHL Damascus sent an email indicating that it had faxed a hard copy proof of delivery to Mr. Bitsuc, and Mr. Bitsuc responded that he received the fax. *Id*. at 11-12.[4] That same day, Mr. Bitsuc faxed a letter to Mr. MacAllister indicating that DHL had traced the shipment through the shipping cycle and found that the "shipment was delivered to the consignee on October 30, 2006 at 10:27 a.m. signed for by ESAM." Pls.' Opp'n, Ex. 3 [Dkt. # 67-5] at 2. Attached to this letter is a copy of a DHL delivery log indicating delivery of Airbill Number 778 4577 360, the same Airbill completed by the Clerk, to Syria's Ministry of Foreign Affairs on October 30, 2006, signed by consignee "Esam." *Id*. at 3.

A signed return of service, such as Mr. Bitsuc's letter together with the consignee-signed delivery log presented here, constitutes prima facie evidence of valid service, which can be overcome only by strong and convincing evidence. *See O'Brien v. R. J. O'Brien Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993). Syria contends that it was never served and it questions the validity

---

[4] The November 9 through November 13 emails are certified business records. *See* MacAllister Aff., Ex. 1 [Dkt. # 67-3] at 5 (Certification by DHL Customer Care Supervisor).

of the DHL delivery log because:

        1.  While the delivery log states that it is "sheet one of two," there is only one entry on sheet one and no sheet two.

        2.  The single entry on the log contains the name "Esam" written in Arabic, but no typed name of the delivery location.  DHL logs in other cases have included the typed name of the delivery destination in English.  *See* Syria's Rule 60(b) Mot., Exs. B & C.

        3.  Plaintiffs asked for delivery confirmation on approximately November 9, 2006, and DHL did not provide a copy of the delivery log until November 13, 2006.

        4.  Plaintiffs have not presented any evidence tracking the delivery while it was en route.

        5.  Because "Esam" has signed to accept deliveries at Syria's Ministry of Foreign Affairs in other cases, see Syria argues that Esam's signature would be easy for DHL to replicate.

Syria's Rule 60(b) Mot. at 4-8; *see also* Syria's Reply [Dkt. # 73] at 2-9.  Thus, Syria characterizes the delivery log as a suspect document that DHL was slow to provide and that could have been forged.

        Although Syria bears the burden of proving its right to relief under Rule 60(b), Syria did not present affidavits or testimony to the Court.  Instead, it presents only speculation and lawyer's arguments that attempt to persuade the Court that Plaintiffs' service evidence is fraudulent. The fact that the delivery log says "sheet one of two" but only contains a single signature is not strong and convincing evidence that Esam's signature is false.  The delivery log contains the same Airbill Number as the Airbill completed by the Clerk.  Moreover, Syria's admission that Esam has accepted deliveries at Syria's Ministry of Foreign Affairs in other cases indicates that it is likely that Esam would be the signatory here.  The four day period between Plaintiffs' request for DHL proof of delivery and DHL's fax providing such proof is a short delay, considering the time differences

between the countries and the intervening weekend, and does not raise suspicion regarding the validity of the delivery log.  Finally, the fact that DHL did not provide tracking evidence is not important.  Because tracking evidence does not contain the signature of the recipient, it would not provide the proof of actual delivery that Plaintiffs were looking for.  Plaintiffs sought and DHL provided the consignee's signature.

Syria further argues that the DHL service was defective because it was not "return receipt delivery;" the DHL delivery log is an internal document that is not provided to the sender in the ordinary course.  "Return receipt" delivery is more expensive and requires that the mail service obtain a signature on delivery and send the signed receipt to the sender.  Syria erroneously contends that "return receipt" delivery is mandated by 28 U.S.C. § 1608(a)(3).  Section 1608(a)(3) requires service "by any form of mail requiring a signed receipt."  Here, the DHL delivery log constitutes such a receipt.

In a case similar to this one, *Abur v. Republic of Sudan*, 437 F. Supp. 2d 166 (D.D.C. 2006), the district court found adequate evidence of service on Iran and Sudan under § 1608(a)(3).  In that case, the plaintiffs provided both tracking receipts from DHL as well as signed DHL delivery logs.  The court found that the evidence reflected "active participation" by both the dispatcher and the recipient that was sufficient to satisfy the core function of service — to give notice of the pendency of legal action. 437 F. Supp. 2d at 173.  The court entered defaults against Iran and Sudan based on this evidence of service.  *Id*.  Like the service evidence in *Abur*, the DHL letter and signed delivery log reflect active participation by the sender and recipient.  Such service was sufficient to give notice to Syria of this case.

**B.  Syria's Theories of Relief That Have Been Rejected by the D.C. Circuit**

Syria makes three additional arguments in support of its Rule 60(b) motion which have been previously rejected by the D.C. Circuit.  First, Syria argues that the default judgment should be vacated because this case presents a non justiciable political question.  "The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986).  In *Baker v. Carr*, 369 U.S. 186 (1962), the Supreme Court enumerated six factors that may render a case nonjusticiable under the political question doctrine:  (1) textually demonstrable constitutional commitment of the issue to a coordinate political department; (2) a lack of judicially discoverable and manageable standards for resolving it; (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; (4) the impossibility of a court's undertaking independent resolution without expressing a lack of respect due to coordinate branches of government; (5) an unusual need for unquestioning adherence to a political decision already made; or (6) the potentiality of embarrassment of multifarious pronouncements by various departments on one question.  *Baker*, 369 U.S. at 217.  "To find a political question, [the Court] need only conclude that one factor is present, not all."  *Schneider v. Kissinger*, 412 F.3d 190,194 (D.C. Cir. 2005).

Syria argues that this case falls under all of the *Baker* factors, that the designation of a state as a sponsor of terror, a critical element of abrogation of sovereign immunity under the terrorism exception to sovereign immunity in the FSIA, is a political decision that is made by the

executive branch and not by the courts.[5]  The D.C. Circuit previously rejected the claim that suits

under 28 U.S.C. § 1605(a)(7), the predecessor to § 1605A, present a nonjusticiable political question.

*See Simon v. Republic of Iraq*, 529 F.3d 1187,  1197 (D.C. Cir. 2008), *rev'd in part on other grounds*

*sub nom. Republic of Iraq v. Beaty*, 129 S. Ct. 2193 (2009).  "[I]f the political branches decide tort

suits against a foreign sovereign are contrary to the foreign policy of the Nation, then they may by

law remove them from [the court's] jurisdiction."  *Simon*, 529 F.3d at 1197; *see also Klinghoffer v.*

*S.N.C. Achille Lauro*, 937 F.2d 44, 49 (2d Cir. 1991) (a case under the terrorism exception to

sovereign immunity presents a question of tort liability and "[t]he department to whom this issue has

been 'constitutionally committed' is none other than our own — the Judiciary.").

Second,  Syria contends that § 1605A, and its predecessor § 1605(a)(7), violate the

United Nations Charter — that by abrogating sovereign immunity for foreign states designated as

sponsors of terrorism, FSIA denies such sovereign nations equality with others in violation of Article

2.1 of the United Nations Charter.  This argument also has been rejected by the D.C. Circuit.  *See*

*Wyatt v. Syrian Arab Republic*, Civ. No. 06-7094, 2008 WL 441828, at *2 (D.C. Cir. Jan. 25, 2008)

("[E]ven if Article 2.1 does demand strict equality across states, the provisions are not in conflict

because § 1605(a)(7) does not treat Syria (and the other terrorism states) unequally.").[6]

Third, Syria argues that §1605A violates the separation of powers among the three

---

[5] This argument is not one asserting lack of jurisdiction.  Instead, Syria is arguing that the
Plaintiffs fail to state a claim.  *See Baker*, 369 U.S. at 198 (when a case is nonjusticiable,
consideration is not wholly and immediately foreclosed as it is when jurisdiction is lacking); *accord*
*Oryszak v. Sullivan*, No. 08-5403, Slip Op. at 6 n.3 (D.C. Cir. Aug. 14, 2009).

[6] Syria also complains that the State Department's decision regarding designation of a state
as a sponsor of terrorism is made behind closed doors without any opportunity to be heard.  This
claim will not be addressed as the State Department is not a party here and Syria has made no claim
against it.

branches of government. Syria alleges that judgments under § 1605A may be subject to rescission

by Congress or the President. *See* Syria's Reply at 19-20. For example, the designation of Libya as

a state sponsor of terrorism was withdrawn retroactively, voiding final judgments against Libya

under FSIA. *Id*. The D.C. Circuit upheld FSIA's constitutionality in *Owens v. Republic of Sudan*,

531 F.3d 884, 888 (D.C. Cir. 2008). There, the Circuit found that the Constitution assigns to

Congress the power to define the jurisdiction of the lower federal courts and Congress exercised this

power in granting jurisdiction to the courts under FSIA. The Circuit did not find that FSIA violated

the constitutional requirement of separation of powers.

Syria presents no argument that would require § 1605A to be treated differently than

the Circuit has treated its predecessor, § 1605(a)(7). The D.C. Circuit has rejected the theories that

the terrorism exception to foreign sovereign immunity presents a nonjusticiable political question,

violates the U.N. Charter, or constitutes an unconstitutional violation of the separation of powers.

This Court is bound by such precedent.

### C. Applicability of 28 U.S.C. § 1605A

While Syria's Rule 60(b) motion will be denied as explained above, Syria has shown

that it is entitled to other relief. On June 30, 2009, the Court issued an Order to Show Cause to

Plaintiffs why this case should not be dismissed for failure to state a claim due to the intervening

D.C. Circuit decision in *Simon*, 529 F.3d at 1192. *See* June 30, 2009 Order to Show Cause [Dkt. #

68].[7] In *Simon*, the court held that § 1605A, the basis of the judgment in this case, was not

automatically retroactive. *Simon*, 529 F.3d at 1192. This Court previously had determined that the

---

[7] As Plaintiffs timely responded to the Order to Show Cause, the Order to Show Cause will
be discharged.

statute was retroactive.  *See* Feb. 27, 2008 Order [Dkt. # 27].

When this lawsuit was filed, the Flatow Amendment[8] to FSIA provided a federal

cause of action against only "an official, employee or agent" of a foreign state but did not provide

a federal cause of action against the foreign state itself.  *See Cicippio-Puleo v. Islamic Republic of*

*Iran*, 353 F.3d 1024, 1027 (D.C. Cir. 2004) ("Section 1605(a))(7) [of Title 28] merely waives

sovereign immunity of a foreign state without creating a cause of action against it . . . .")  Under this

statutory scheme, a plaintiff could bring suit against a foreign state and a federal court would have

jurisdiction under § 1605(a)(7) — but the substance of the claims against the foreign state would be

derived from state law under § 1606.  Section 1606 provides: "[T]he foreign state shall be liable in

the same manner and to the same extent as a private individual under like circumstances; but a

foreign state except for an agency or instrumentality thereof shall not be liable for punitive

damages." 28 U.S.C. § 1606.  Section 1606 functioned as a "pass through," and in this way foreign

states could be liable via § 1606 under another specific source of law, such as state law.  *See, e.g.,*

*Oveissi v. Islamic Republic of Iran*, Civ. No. 07-7132, 2009 WL 2224806, at *3 (D.C. Cir. July 28,

2009) (citing *Acree v. Republic of Iraq*, 370 F.3d 41, 59 (D.C. Cir. 2004), *abrogated on other*

*grounds by Republic of Iraq v. Beaty*, 129 S. Ct. 2183 (2009)); *Heiser v. Islamic Republic of Iran*,

466 F. Supp. 2d 229, 265-66 (D.D.C. 2006); *Dammarell v. Islamic Republic of Iran*, Civ. No. 01-

2224, 2005 WL 756090, at *1 (D.D.C. Mar. 29, 2005).  Despite the applicability of other sources

of law, § 1606 provided that foreign states were expressly exempt from liability for punitive

damages.  *Fisher v. Great Socialist People's Libyan Arab Jamahiriya*, 541 F. Supp. 2d 46, 53

(D.D.C. 2008).

---

[8] The Flatow Amendment was codified at 28 U.S.C. § 1605 Note.

On January 28, 2008, Congress enacted the National Defense Authorization Act for Fiscal Year 2008 ("NDAA"), Pub. L. No. 110-181, 122 Stat. 3 (2008). Section 1083 of the NDAA revised the terrorism exception to sovereign immunity by repealing § 1605(a)(7) and adding a new exception to be codified at § 1605A. Section 1605A is more advantageous to plaintiffs in several respects — most notably, it creates a federal cause of action against foreign states for which solatium and punitive damages may be awarded. *See* 28 U.S.C. § 1605A ("A foreign state that is or was a state sponsor of terrorism . . . shall be liable . . . for money damages. . . . [D]amages may include economic damages, solatium, pain and suffering, and punitive damages.").

Plaintiffs argued to this Court that § 1605A was retroactive and applied to all then-pending cases. *See* Pls.' Mot. for Leave to Proceed Under Newly Enacted Statute ("Pls.' Mot. to Proceed Under New Statute") [Dkt. # 26] at 4. Plaintiffs contended that the Complaint that they originally filed and served included an allegation of a federal cause of action against Syria, a claim for solatium, and a claim for punitive damages. *See* Redacted Compl. [Dkt. # 21], Count IV and IX. Thus, Plaintiffs contended they should be permitted to proceed, without serving Syria, under a new claim for relief pursuant to § 1605A because the new claim was the same as the claim in the original Complaint. "As Plaintiffs' new claim for relief is the same as the claim for relief previously asserted and served upon Defendants, except for the ministerial substitution by Congress of 1605A in place of 1605(a)7, service of such new claim is, and should be determined by the court to be, unnecessary." Pls.' Mot. to Proceed Under New Statute at 6-7. Syria had not appeared in this action and thus no response to Plaintiffs' motion to proceed under the new statute was filed. The Court granted Plaintiffs' motion, ordering that Plaintiffs could proceed under § 1605A without filing an amended complaint and without further service of process. Feb. 27, 2008 Order [Dkt. # 27].

As already noted, the D.C. Circuit has since interpreted § 1605A to have no automatic retroactive effect. *See Simon*, 529 F.3d at 1192 ("[T]he new terrorism exception in § 1605A by its terms does not provide a substitute basis for jurisdiction over all cases pending under § 1605(a)(7) when § 1605A replaced it.").

Plaintiffs argue that while the new private federal cause of action under § 1605A does not *automatically* apply retroactively, it does apply in this case because the NDAA permits a plaintiff to proceed under § 1605A if the plaintiff moves for court permission, and the Court granted Plaintiffs permission to proceed under § 1605A.  In *Simon*, the NDAA came into effect while the case was on appeal; thus the plaintiffs did not move to proceed under § 1605A like Plaintiffs did in this case.

Plaintiffs contend that they qualify for retroactive application under the terms of the NDAA, which provides:

(c) Application to Pending Cases —

(2) Prior Actions —

(A) In General — With respect to any action that:

> (i) was brought under section 1605(a)(7) of title 28, United States Code . . . before the date of the enactment of this Act,
>
> (ii) relied upon either such provision as creating a cause of action,
>
> (iii) has been adversely affected on the grounds that either or both of these provisions fail to create a cause of action against the state, and
>
> (iv) as of such date of enactment, is before the courts in any form, including on appeal or motion under rule 60(b) of the Federal Rules of Civil Procedure, that action, and any judgment in the action shall, on motion made by plaintiffs to the United States district court where the action was initially brought, or judgment in the action was initially entered, be given effect as if the action had originally been filed under section 1605(A)(c) of title 28, United States Code.

Pub. Law 110-181, § 1083(c)(2)(A) (2008).  The NDAA also provides:

> (C) Time Limitations — A motion may be made or an action may be refiled under subparagraph A only —
>
>> (i) if the original action was commenced no later than the latter of
>>
>>> (I) 10 years after April 24, 1996; or
>>>
>>> (II) 10 years after the cause of action arose; and
>>
>> (ii) within the 60-day period beginning on the date of the enactment of this Act.

*Id.* § 1083(c)(2)(C).  Plaintiffs assert that the Court was required to grant their Motion for Leave to Proceed under § 1605A, that the Court had a nondiscretionary duty to grant the motion because Plaintiffs qualified under subsections (i) through (iv) of § 1083(c)(2)(A), and thus "the action *shall* . . . be given effect as if the action had been originally filed" under section 1605A.  *Id.* § 1083(c)(2)(A) (emphasis added).

Syria argues that Plaintiffs do not meet the criteria in § 1083(c)(2)(A)(ii) or (iii). First, under subsection (ii), Plaintiffs could not have relied on § 1605(a)(7) or the Flatow Amendment as creating a cause of action because at the time the complaint was filed, the law was clear that neither of these statutes provided a cause of action against a foreign state.  *See Cicippio*, 353 F.3d at 1027.  Second, under subsection (iii), Plaintiffs have not been adversely affected by any reliance on § 1605(a)(7) or the Flatow Amendment because they are not barred by the statute of limitations from filing and serving a new suit under § 1605A.[9]

The Court does not reach the issue of whether Plaintiffs met the criteria of § 1083(c)(2)(A)(i)-(iv) because even if they did, the claim under 1605A should have been served on

---

[9] Because Messrs. Armstrong and Hensley were killed on September 20 and 21, 2004, the limitations period for a suit under § 1605A extends to 2014.  *See* NDAA § 1083(c)(2)(C).

Syria.  New claims for relief must be served on a defaulting party under Federal Rule of Civil

Procedure 5 (a)(2):

> No service is required on a party who is in default for failing to
> appear.  But a pleading that asserts a new claim for relief against such
> a party must be served on that party under Rule 4.

Fed. R. Civ. P. 5(a)(2).  Rule 5(a)(2) is mandatory — it provides that a pleading that asserts a new

claim for relief *must* be served.  Section 1605A provided a new, and now viable, claim for relief

against Syria — a private federal cause of action, including a claim for punitive damages.

Because Plaintiffs did not serve their claim under § 1605A against Syria, the Court

would grant other relief to Syria under Rule 60(b)(6) because it is "appropriate to accomplish

justice."  *See Klapprott*, 335 U.S. at 614-15.  While Plaintiffs could not proceed under § 1605A

without service, the Court retained jurisdiction over their claim under § 1605(a)(7).  *See Simon*, 529

F.3d at 1198 ("courts retain jurisdiction pursuant to § 1605(a)(7) over cases that were pending under

that section when the Congress enacted the NDAA").  Inasmuch as Syria raises only legal defenses

already rejected by the D.C. Circuit and Plaintiffs would be terribly prejudiced by having to re-live

the presentation of evidence, the Court would not vacate its findings of fact and instead would amend

its legal analysis.  Therefore, the Court would (1) vacate the February 27, 2008 Order permitting

Plaintiffs to proceed under § 1605A and (2) amend the September 26, 2008 Memorandum Opinion

and Order to analyze Plaintiffs' claims under §§ 1605(a)(7) and 1606, applying applicable statutory

and common law.[10]

---

[10] Based on the domicile of each claimant, Plaintiffs contend that Georgia law applies to the
claims for damages on behalf of Mr. Hensley's family and of his Estate.  They assert that Michigan
law applies to the claims of Mr. Armstrong's mother and the law of Ontario, Canada applies to the
claims of Mr. Armstrong's sister.  Further, they aver that the law of Michigan applies to the claims
of Mr. Armstrong's Estate.  But there was testimony that Mr. Armstrong lived in Thailand, so it

## IV.  CONCLUSION

For the reasons explained above, Syria's motion to vacate judgment as void under

Rule 60(b)(4) [Dkt. # 66] will be denied.  However, the Court would grant other relief to Syria —

*i.e.*, the Court would vacate the February 27, 2008 Order permitting Plaintiffs to proceed under

§ 1605A [Dkt. # 27] and it would amend the legal analysis in its September 26, 2008 Memorandum

Opinion and Order [Dkt. ## 42 & 43] to provide for damages as calculated under 28 U.S.C. §§

1605(a)(7) and 1606.  A memorializing order accompanies this Memorandum Opinion.


Date: August 20, 2009                                 _____/s/_____
                                                                       ROSEMARY M. COLLYER
                                                                       United States District Judge

---

appears that Thai law may apply to the claims of his estate.  The conflicts of law issues in this case
have never been fully briefed.  For a discussion regarding the conflicts of law analysis applicable to
FSIA cases such as this one, *see Oveissi*, at *4-7 (finding that French law applied, as plaintiff and
his decedent were domiciled in France at the time the death occurred).